Argued May 5, reversed September 12, 1978

STATE OF OREGON, *Respondent,*
*v.*
JAMES WILLARD FRANKLIN, *Petitioner.*
(TC 77-320-E, CA 8207, SC 25653)
583 P2d 557

Gary L. Hooper, Deputy Public Defender, Salem, and Donald F. Myrick, Grants Pass, argued the cause for petitioner. On the petition for review and on the brief were Donald H. Coulter, Grants Pass, and Myrick, Coulter, Seagraves, Nealy & Myrick, Grants Pass.

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for respondent. On the brief

were James A. Redden, Attorney General, W. Michael Gillette, Solicitor General, and Kevin L. Mannix, Assistant Attorney General, Salem.

LENT, J.

.

**LENT, J.**

This is a criminal case in which the defendant was charged by information with violating ORS 162.185(1) (a), "Supplying Contraband," by knowingly and unlawfully introducing marijuana into the Josephine County Jail, where defendant was confined. Defendant's conviction by a jury was appealed to and affirmed by the Court of Appeals, *State v. Franklin,* 31 Or App 193, 570 P2d 96 (1977). Review was allowed to determine the proper construction of the statutory provisions pursuant to which defendant was charged and the evidence required to prove a violation thereof.[1]

The statutes themselves, ORS 162.185,[2] defining the crime of "Supplying Contraband," and ORS 162.135(1),[3] defining "Contraband," have been construed in *State v. Meyer,* 283 Or 449, 583 P2d 553 (1978), decided this date. To the extent that the issues coincide, that case controls here. Thus, the trial court did not err, as charged by the defendant, in denying defendant's motions for judgment of acquittal and for directed verdict on the basis that the legislature intended that the item of alleged contraband involved here, marijuana, *not* be included in the statutory definition of contraband under ORS 162.135(1). *See State v. Meyer* at 283 Or 555.

We next consider the evidence produced by the state's only witness at trial, which was directed toward

---

[1]The petition for review was allowed, and the case was argued in conjunction with that of *State v. Meyer,* 283 Or 449, 583 P2d 553 (1978) decided this date.

[2]ORS 162.185(1)(a) is a Class C felony and provides:

"(1) A person commits the crime of supplying contraband if:

"(a) He knowingly introduces any contraband into a correctional facility, juvenile training school or state hospital; * * *"

[3]ORS 162.135(1) provides:

"Contraband means any article or thing which a person confined in a correctional facility, juvenile training school or state hospital is prohibited by statute, rule, regulation or order from obtaining or possessing, and whose use would endanger the safety or security of such institution or any person therein."

[ 441 ]

proving that the particular item introduced by the defendant was "contraband." Defendant concedes that the first prong of the two-prong definition of contraband contained in ORS 162.135(1) was satisfied, since the unlawful possession of marijuana by any person was prohibited by ORS 167.207.[4]

The totality of the state's evidence on the second prong, that the item of alleged contraband was "an article or thing * * * whose use would endanger the safety and security of such institution or any person therein," consisted of the following testimony by a "jailer" at the Josephine County Jail, where defendant was confined:

"Q. [by counsel for the state] Mr. Dylina, in your work in the Josephine County Jail, you've been there what, approximately two years now?

"A. Yes, sir.

"Q. Mr. Dylina, would you tell us whether or not marijuana in any quantity is—would endanger—if it were used in the Josephine County Jail—if it would endanger the safety or security of that institution or any person inside of that institution?

[objections by defense counsel overruled]

"Q. I'll re-ask the question. Mr. Dylina, as a custodian of the Josephine County Jail, would you state whether or not the introduction of marijuana in any quantity, whether it be this quantity or another quantity, would endanger the safety or security of the Josephine County Jail or for that matter, any person therein?

[objections by defense counsel overruled]

"THE WITNESS: Yes, sir, it could.

"* * * * *

---

[4] ORS 167.207 (now repealed and replaced, Or Laws 1977, ch 745) provided, in pertinent part:

"(1) A person commits the offense of criminal activity in drugs if he knowingly and unlawfully * * * possesses * * * a narcotic or dangerous drug.

"* * * * *

"(3) Notwithstanding subsection (2) of this section, if the conviction is for possession of less than one avoirdupois ounce of marijuana it is a violation punishable by a fine of not more than $100."

[by defense counsel]

"Q.   Marijuana in your experience is a depressant, is it not?

"A.   Sir, I really couldn't say much about marijuana because the people that I saw under what I felt was probably the influence of marijuana, there could have been other factors, too.

"Q.   I believe the District Attorney's question to you was whether marijuana in any quantity, and I assume he's referring to the two grams that we have here, Exhibit #2, endanger the safety or security of the jail facility?

"A.   Yes, sir.

"Q.   How do you reach that conclusion?

"A.   In the fact that it could be accumulated.

"Q.   I'm speaking—you're speaking then, if I brought in two ounces now and two ounces later—or not—grams now and gram later, we eventually could get enough it could cause problems?

"A.   This is true. I'm not sure how much marijuana it takes to get a person high shall we say.

"Q.   Well, you're speculating then two ounces could be built up into more, and that when it was built up into more then it might become a problem?

"A.   This is one possibility. I don't know whether that much there might not be a problem.

"* * * * *

"Q.   Confining your answer to Exhibit #2, what is there in Exhibit #2 that would cause you to testify that you felt it would create danger to the safety and security of the Josephine County Jail?

[colloquy of counsel]

"A.   The fact that the party might become high and create a problem.

"Q.   You're aware there's two grams there?

"A.   Yes, sir.

"Q.   And is that the sole basis of your answer, the previous answer to Mr. Burrows, your opinion?

"A.   Plus the fact that it could be accumulated into larger quantities through, as you stated, other amounts being brought in.

[ 443 ]

[by counsel for the state]

"Q. Mr. Dylina, the question that I asked you was a little different than Mr. Myrick's question. Mr. Myrick left out a couple of things. And we're talking about my question, I think, being danger of the safety or security of the institution or any person inside, if a person has marijuana inside the jail, is that something somebody else from the jail might want to take from them?

[objection by defense counsel overruled]

"A. Yes, sir.

"Q. Just the mere presence of marijuana, could that cause problems in the jail?

"A. In this manner, yes, sir.

"Q. Would that be another reason then in addition to the ones that you've already given?

"A. Yes, sir."

Our task now is to evaluate this evidence and to determine whether it is sufficient to support the conclusion, inherent in the jury verdict of conviction, that two grams of marijuana is "an article or thing * * * whose use would endanger the safety or security of such institution or any person therein." First we must consider the witness' assertion in response to the prosecutor's conclusory question, that the introduction of marijuana in any quantity *could* endanger the safety or security of the Josephine County Jail or, for that matter, any person therein. This opinion raises a number of problems. Firstly, it is just that—an opinion. Although defendant objected to the leading nature of the question, he did not object to the question or answer as unqualified opinion testimony. Thus, it was available for jury consideration for whatever weight the jury chose to give it.

Secondly, the testimony elicited by the question did not cover precisely the statutory definition of contraband. It did not address itself to the "use" of the alleged contraband but only its "introduction." The statutory language requires that the danger to be proved relate to the *use* of the contraband. In addition, the statutory language requires that the state prove

that the use of the alleged contraband *would* be a danger. The witness stated that it "could" be a danger. Assuming that the witness was an expert, he addressed himself only to a possibility. This is insufficient even to present a jury question in a civil case, where the plaintiff's burden is only to prove his case by a preponderance of the evidence. *See, for example, Sims v. Dixon,* 224 Or 45, 48, 355 P2d 478 (1960).

Further examination of this witness' testimony cast serious doubt upon the validity and thus the sufficiency thereof.

In *Wintersteen v. Semler,* 197 Or 601, 621, 250 P2d 420, 255 P2d 138 (1953), this court stated a rule:

> "* * * Although we must and do assume as true all facts to which [the witness] testified, we are not required to, nor do we, assume the correctness of any of his conclusions or opinions unless they are based upon substantial evidence in the record."

Such an opinion, concluded the *Wintersteen* court, "presents no question for jury determination, unless it is based upon facts and, in the light of all the evidence in the case, is reasonably sustainable." 197 Or at 629.

We turn to the basis for the witness' opinion that the two grams of marijuana was dangerous. From the witness' further testimony on cross-examination and redirect, it is apparent that there were three bases upon which the witness grounded his opinion:

(1) The two grams of marijuana could be accumulated into a greater quantity;

(2) An inmate could get "high" and "cause problems"; and

(3) The two grams of marijuana could be considered a "prized possession" engendering jealousy and contention among the inmates.

The first reason cannot stand as an independent basis for the witness' opinion. The mere fact of accumulation, without a showing that the amount

[ 445 ]

likely to be accumulated would somehow qualify under the statutory definition, is not a sufficient foundation for the witness' opinion. The state sought to supply the missing link with the two other bases.

The second basis is another opinion—really two related opinions: (1) that an inmate could get "high" on the two grams of marijuana seized and (2) that such a condition would "cause problems" which would endanger the safety or security of the institution or a person therein. Not only are there no facts in evidence which would sustain these opinions, but the witness' acknowledgement that he "really couldn't say much about marijuana" and that he knew neither the quantity of marijuana needed to produce a "high" nor the effect of such marijuana use, indicate that these opinions were not based on facts and, in the light of the facts in evidence in the case, were not reasonably sustainable. The second basis cannot support the witness' opinion that the alleged contraband was dangerous.

Superficially the third reason offered has more inherent validity. While the witness indicated he knew nothing about the *use* of marijuana, he did indicate that, as a jailer with two years' experience, he knew something about its *mere possession*—that "just the mere presence of marijuana" as an item coveted by other inmates could create a danger.

The question here is whether evidence that the prohibited item was a "prized possession" likely to be the subject of contention between inmates is sufficient to establish that the item was "an article or thing * * * whose use would endanger the safety and security of such institution or any person therein." The terms of the statute itself indicate otherwise.

■ The drafters of ORS 162.135(1) used both the term "possession" and the term "use" in their definition of contraband. The distinction, then, must have been intended to be important. We hold that the danger

which must be proven must involve the *use* of the item, not the mere possession; danger based on the "prized-possession" theory does not meet the mark.

This construction is reinforced by the legislative history of this section. When the Criminal Law Revision Commission (Commission) considered the predecessors of the sections in question, they feared that items such as candy bars, sandwiches or comic books might be included under a definition of contraband which did not include the second prong of the present ORS 162.135(1). Possession of these items, opined the Commission, did not deserve criminal sanctions. The definition of contraband was amended to include the requirement that the *use* of the prohibited item must be dangerous. The construction supporting the state's position would thwart this intent and violate both the letter and the spirit of this statutory provision.

The state failed to establish, as a matter of law, a critical element of its case. The trial court erred in denying the defendant's motions for judgment of acquittal, and the judgment of conviction must be reversed.