Argued May 5, affirmed September 12, 1978

STATE OF OREGON, *Respondent,*
*v.*
WILLIAM CRAIG MEYER, *Petitioner.*
(TC 1541, CA 8212, SC 25652)

583 P2d 553

Gary L. Hooper, Deputy Public Defender, Salem, and Donald F. Myrick, Grants Pass, argued the cause for petitioner. On the petition for review and on the brief were Gary D. Babcock, Public Defender, Salem, and Gary L. Hooper, Deputy Public Defender, Salem.

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

LENT, J.

**LENT, J.**

Defendant was charged by information with violating ORS 162.185(1)(b), "Supplying Contraband." The state appealed from an order sustaining defendant's demurrer to the information. The Court of Appeals reversed and remanded for trial, *State v. Meyer,* 31 Or App 103, 569 P2d 708 (1977). Defendant's petition for review[1] was allowed to determine the proper construction of this statutory provision and its companion, ORS 162.135(1).

The information read as follows:

"The undersigned District Attorney for the above county hereby files this information against said defendant and charges defendant with the offense of SUPPLYING CONTRABAND committed as follows:

"That said WILLIAM CRAIG MEYER on or about the 11th day of March, 1977, in the county of Hood River, Oregon, then and there being, did knowingly and unlawfully possess marijuana, contraband, while confined in the Hood River County Jail, a correctional facility, contrary to the statutes in such case made and provided and against the peace and dignity of the State of Oregon."

The crime of "Supplying Contraband" is set out in ORS 162.185 as follows:

"(1) A person commits the crime of supplying contraband if:

"(a) He knowingly introduces any contraband into a correctional facility, juvenile training school or state hospital; or

"(b) Being confined in a correctional facility, juvenile training school or state hospital he knowingly makes, obtains or possesses any contraband.

"(2) Supplying contraband is a Class C felony."

"Contraband" is in turn defined by ORS 162.135(1) as follows:

---

[1]The petition for review was allowed, and the case was argued in conjunction with that of *State of Franklin,* 31 Or App 193, 570 P2d 96 (1977), decided this date, 283 Or 439, 583 P2d 557 (1978).

"(1) 'Contraband' means any article or thing which a person confined in a correctional facility, juvenile training school or state hospital is prohibited by statute, rule, regulation or order from obtaining or possessing, and whose use would endanger the safety or security of such institution or any person therein."

The facts alleged in the information charge defendant with the violation of ORS 162.185(1)(b), possessing contraband. To charge such a violation, the state must allege:

(1) Defendant, at the critical time, was confined in a correctional facility (or juvenile training school or state hospital); and

(2) Defendant knowingly possessed (or made or obtained) an item of "contraband."

The information clearly alleged these two elements.

Defendant argued on demurrer and before the Court of Appeals and this court that the item of "contraband" allegedly possessed by the defendant, marijuana, was not comprehended under the definition of contraband given in ORS 162.135(1) as quoted above, and, therefore, as a matter of law, defendant did not possess "contraband" and the information was fatally defective.

Defendant acknowledges that the first part of the definition of "contraband" is satisfied in this case, since the possession of marijuana by any person, inmate or not, was prohibited by ORS 167.207.[2] Defendant argues instead that marijuana, as a matter of law, does not satisfy the second requirement of ORS 162.135(1)—that the item must be an "article or thing

_____

[2]ORS 167.207 (now repealed and replaced, Or Laws 1977, ch 745) provided, in pertinent part:

"(1) A person commits the offense of criminal activity in drugs if he knowingly and unlawfully * * * possesses * * * a narcotic or dangerous drug.

"* * * * *

"(3) Notwithstanding subsection (2) of this section, if the conviction is for possession of less than one avoirdupois ounce of marijuana it is a violation punishable by a fine of not more than $100."

[ 452 ]

* * * whose use would endanger the safety or security of such institution or any person therein."

In support of this position, defendant cites the legislative history of ORS 162.135(1) as an indication of a legislative intent *not* to include marijuana under the definition of contraband. We find no such indication from a review of that legislative history and, in fact, to a *limited* extent,[3] the legislative history indicates an intention to include items such as marijuana within the ambit of "contraband."

As proposed in the preliminary drafts of the Criminal Law Revision Commission (Commission), the definition of contraband was limited to the first prong of the present definition, while a second definition, that of "dangerous contraband," was added to cover contraband "whose use would endanger the safety or security of a detention facility, juvenile training school, state hospital or any person therein." This dichotomy was derived from New York Revised Penal Law, § 205.00(3) and (4), adopted by New York in 1965. The Practice Commentary[4] to the New York statutes distinguishes these two definitions:

> "An alcoholic beverage is an example of contraband [under Section 205.00(3)]. Weapons, tools, explosives and similar articles likely to facilitate escape or cause disorder, damage or physical injury are examples of dangerous contraband [under Section 205.00(4)]."

The New York Revised Penal Law designates, as did the Commission's preliminary drafts, two separate crimes, depending on whether the contraband supplied

---

[3] These limits are explored more fully in *State v. Franklin, supra* n. 1 at 451.

[4] According to the "explanation" contained in the New York Revised Penal Code, at page III,

> "The Practice Commentaries which follow the statutory text in these volumes are designed to explain the changes that were made by the revision, to clarify the meaning of the terms and to offer practice suggestions."

They appear to play a similar role to that of the Commentary to the proposed Oregon Criminal Code.

[ 453 ]

was "simple contraband" (Section 205.020, punishable as a misdemeanor) or "dangerous contraband" (Section 205.025, punishable as a felony).[5]

These sections in the Commission's preliminary drafts were changed when considered by the full Commission on March 18 and 19, 1970. The minutes of these proceedings indicate that some members of the Commission objected to the placing of criminal sanctions on the supplying or possession of mere contraband where such items might include "sandwiches or comic books" if those items were prohibited by institution rule. The Commission then voted to combine the two definitions and create a single offense which would involve supplying contraband as it is presently defined.[6]

The defendant argues that the net result of the Commission action was to adopt the equivalent of Section 205.025 and Section 205.00(4) of the New York Revised Penal Law as Oregon law. From that proposition defendant contends that the Oregon Legislature, in adopting Sections 189(1) and 194 of the proposed draft of the 1971 Oregon Criminal Code, adopted also the interpretation placed upon the New York statutes by New York legislative and judicial bodies. Neither proposition is borne out by the legislative history of these provisions.

First of all, ORS 162.135(1), while derived from New York by Penal Law Section 205.00, underwent, in the words of the Commission commentator, "substantial alteration." Final draft at 193. The New York statute defines contraband as dangerous when it "is capable of such use as may endanger the safety or

---

[5] In *People v. Soto,* 77 Misc 2d 427, 353 NY Supp 2d 375 (1974), the Criminal Court of the City of New York, Bronx County, citing the examples given in the Practice Commentary and reviewing New York legislative history, held, as a matter of law, that marijuana was *not* dangerous contraband.

[6] As far as we can tell, the relevant sections of the final draft (Sections 189(1) and 194) were approved by Senate and House committees without change or discussion.

security of a detention facility or any person therein." Section 205.00(4). ORS 162.135(1), on the other hand, defines as contraband articles and things "whose use would endanger the safety or security of such institution or any person therein." The latter, while derived from the former, is not an adoption of or copied from it. The phrase "whose use would" connotes a higher level of certainty than the phrase "is capable of such use as may." The New York language indicates an emphasis on the potentiality of danger, while the Oregon language emphasis is on its actuality.

Secondly, we must critically evaluate defendant's attempt to force a sister state's interpretation of an admittedly similar statute upon us. In *Fleischhauer v. Bilstad et al, Gray et ux,* 233 Or 578, 585, 379 P2d 880 (1963), we stated and followed "the presumption that when the legislature adopts the statute of another state it intends to adopt also the construction theretofore placed upon the statute by the highest court of that state." Defendant's argument is wide of this mark on several counts. It is clear from the above discussion that the Oregon legislature did not "adopt" the New York statute as its own. The drafters themselves indicated that the alteration of language was "substantial." Of the two interpretative authorities pressed upon us by the defendant, neither was from the highest court of the state, and only one, the Practice Commentary, was available to the Oregon legislature at the time of its revision of the Criminal Code in 1971.

Even if all prerequisites to the application of this rule of construction were present, only a "presumption" of legislative intent to adopt the sister state interpretation would be created. Such a "presumption" may be rebutted by showing an intent by the legislature contrary to the sister state interpretation. Such a contrary intention, while not without its own ambiguities, is evidenced by the commentary to the final draft and by the legislative action in adopting the

Oregon Criminal Code. In the commentary to Section 194 of the proposed Criminal Code (now ORS 162.185), the drafters state:

"C. Relationship to existing law.

"ORS 475.090 which would be amended prohibits furnishing inmates of penal or correctional institutions, or state, county or city hospitals alcoholic beverages or drugs. The penalty provision is ORS 475.990, which provides for a maximum punishment of five years imprisonment."

As it turned out, ORS 475.090[7] was not amended by the final draft of the proposed Criminal Code, but repealed. *See* Section 318 of the proposed Criminal Code, 1971 Or Laws, ch 743, § 432. From the fact that the drafters of the Criminal Code demonstrated their awareness of former ORS 475.090 and from the fact that the proposed Criminal Code simultaneously repealed this provision and enacted what is now ORS 162.185 and 162.135(1), we infer that the Commission intended that the subject matter covered by the former statute be incorporated, at least to some extent, within the ambit of the latter provision.[8]

On balance, then, we find that the language of ORS 162.135(1) and 162.185 is broad enough to include marijuana as potentially being "contraband" and, having found no legislative intent to the contrary, we hold that it was error for the trial court to determine as a matter of law that an information charging a

---

[7] Former ORS 475.090 provided, in pertinent part:

"(1) Except as provided in subsection (2) of this section, no person shall bring, send or otherwise introduce into the penitentiary * * * or any other penal or correctional institution of this state, * * * or any county jail * * * any drug or alcoholic beverage in any form, for the use of any such inmate or prisoner, without being authorized so to do by the rules governing such institution or place or by specific authorization of the person in charge of such institution or place.

"* * * * *"

[8] *See also* 1975 reprint of Oregon Criminal Code of 1971 at xxviii. Further credence is given to this interpretation by the fact that the violation of ORS 162.185 was made a Class C felony punishable by imprisonment for a maximum of five years, ORS 161.605(3), while the former ORS 475.990 provided for an identical penalty for the violation of ORS 475.090.

violation of ORS 162.185 based on an allegation of the defendant's possession of marijuana, was insufficient to charge a crime under Oregon law.

The judgment of the Court of Appeals in reversing the trial court is affirmed.