**Charles COOPER, Appellant,**

v.

**COMMONWEALTH of Kentucky,
Appellee.**

Court of Appeals of Kentucky.

Feb. 5, 1982.

As Modified on Denial of Rehearing
June 4, 1982.

C. Thomas Hectus (of counsel), Gittleman, Charney & Barber, Louisville, Jack Emory Farley, Public Advocate, Frankfort, for appellant.

Robert V. Bullock, Asst. Atty. Gen., Steven L. Beshear, Atty. Gen., Frankfort, for appellee.

Before WHITE, WILHOIT and WINTERSHEIMER, JJ.

WILHOIT, Judge.

Charles Cooper appeals from his conviction of the offense of promoting contraband in the first degree, a Class D felony, for which he received a sentence of one year.

While the appellant was an inmate at the Kentucky State Reformatory, he was found to be in possession of a "brown powdery substance," which upon analysis by the state police laboratory proved to be marijuana. The evidence indicated that the quantity of marijuana found in his possession was sufficient to make two to four "joints" and that it had a value of approximately $10.00 for sale to other inmates within the institution. The appellant contends that as a matter of law he could only have been guilty of promoting contraband in the second degree, a Class A misdemeanor, rather than the felony for which he was convicted.

KRS 520.050(1)(b) defines the felony of promoting contraband in the first degree to include possession of "dangerous contraband" by a person confined in a detention facility. KRS 520.060(1)(b) defines the misdemeanor of promoting contraband in the second degree to include possession of "contraband" by a person confined in a detention facility. The distinction between "dangerous contraband" and "contraband" is found in KRS 520.010 which defines the former at subsection (3) to be "contraband which is capable of such use as may endanger the safety or security of a detention facility or persons therein [,]" and the latter at subsection (1) to be "any article or thing which a person confined in a detention fa-

cility is prohibited from obtaining or possessing by statute, departmental regulation, or posted institutional rule or order."

The evidence presented at trial established that the Bureau of Corrections by policy treated all marijuana as dangerous contraband and that all inmates are advised of this policy when first admitted to the reformatory. The relevant written policy of the Bureau is found in its "Internal Management Directive" at sections 307.01 to 307.06. A copy of these sections of the directive was filed in the evidence as an exhibit. The definitions of "dangerous contraband" and "contraband" contained therein are identical to their respective statutory definitions. Acknowledging the difficulty of specifically enumerating "all items which would be considered as contraband or dangerous contraband[,]" the directive goes on to furnish specific examples of each. Section 307.04 cites as examples of "dangerous contraband" firearms, weapons, explosives, ammunition, and "any narcotics or dangerous drugs as defined in the Kentucky Revised Statutes and Bureau for Health Services Regulations for Narcotics, Dangerous Drugs or Controlled Substances[.]" Section 307.05 cites as examples of "contraband" "unauthorized money or clothing, disguises or masks, any intoxicating substance, e.g., beer, alcohol, paint thinner, cleaning fluid, etc.[,]" and "any controlled substance not considered a dangerous drug or narcotic by either statute or Bureau for Health Services Regulations for Narcotics, Dangerous Drugs or Controlled Substances." The appellant points out that marijuana is not defined as a narcotic drug by the Controlled Substances Act (KRS Ch. 218A), and we note that KRS 217.725 which defined "dangerous drugs" was repealed in 1972. 1972 Ky.Acts ch. 226, § 33. Marijuana is, however, listed as a Schedule I controlled substance in KRS 218A.050(3) although its possession by one for his own use is only a misdemeanor. KRS 218A.990(7).

It is apparent from the statute defining dangerous contraband and contraband that the Bureau of Corrections is free to designate through appropriate regulation, rule, or order what will constitute "contraband" for purposes of KRS 520.060, while it is given no such freedom as to what constitutes "dangerous contraband" for the purposes of KRS 520.050. Therefore, we must look to the statutory definition itself to determine what is "dangerous contraband," with the commentary to the statute as an aid in construction. *Cooper v. Commonwealth*, Ky., 550 S.W.2d 478 (1977).

The definition of "dangerous contraband" requires first that the article or substance in question be "contraband." As stated previously, contraband includes any article which a person confined in a detention facility is prohibited by statute from possessing. KRS 218A.140 *et seq.* plainly prohibited the possession of marijuana by the appellant; thus, the marijuana was contraband. It must then be determined if it was contraband capable of such use as may endanger the safety or security of the reformatory or persons therein. The commentary to KRS 520.010 states as follows:

Subsection (3) distinguishes dangerous contraband as being inherently dangerous items which may impair the safety or security of the facility or persons there. The definition includes but is not limited to deadly weapons and dangerous instruments (defined in KRS 500.080). It is not necessary for the actor to be aware of the item's legal classification but only to know the physical nature of the article and its potential danger. Weapons, tools, explosives[,] etc., are examples of such contraband, as they are likely to facilitate escape or to cause disorder, damage or physical injury.

This same commentary also states:

Subsection (1) defines contraband as something that an inmate is forbidden to obtain or possess . . . . An alcoholic beverage is an example of contraband.

Evidence was given by a deputy warden of the reformatory that marijuana endangers the security of a penal institution because it can readily be sold to inmates and sexual favors are sometimes used to pay debts incurred from such sales and that assaults among inmates have resulted from

failure to pay debts stemming from its sale on credit. This witness admitted, however, that debts were incurred among inmates in the sale of tobacco and other items, as well as from gambling, and that these debts also caused disorders. He further stated that marijuana produces "highs" and can cause inmates to become more combative toward officers and fellow inmates, although he conceded that alcohol, paint thinner, and lemon extract, which are not considered dangerous contraband by corrections officials, also produce "highs." No evidence was introduced as to the amount of marijuana necessary to be consumed in order to produce the phenomena referred to, nor was there any evidence that the quantity found on the appellant could do so. We assume that the effect produced would vary with the quantity and quality of the substance consumed. Any finding by the jury that the amount of marijuana found on the appellant was sufficient to produce "highs" or combativeness would necessarily have been based on nothing but speculation. By analogy to alcohol, an ounce might produce no change in the demeanor of one consuming it while consumption of a pint would probably do otherwise.

There was no evidence that marijuana in general or the quantity possessed by the appellant in particular could be used in any way to facilitate an escape or to cause damage or physical injury as could be a weapon or explosives or even perhaps some other controlled substance which might be administered covertly to guards or other inmates to render them helpless.

The fact that marijuana is subject to barter within a correctional facility and that the terms of the barter can give rise to disorders does not in our opinion render the substance dangerous contraband in the statutory sense. It is clear from the commentary set out above that an item falls within this category when it is "inherently dangerous." It is not an inherent characteristic of marijuana, even when placed in a penal setting which causes disorders to develop over its sale. The disorders are an adventitious characteristic of the creation of debtor-creditor relationships among inmates, for whatever purpose the relationship may have been created.

In sum, we conclude that when KRS 520.010(1) and (3) are construed in light of the commentary thereto and are applied to the particular facts before us, the jury could only have found the appellant guilty of promoting contraband in the second degree. This same conclusion on somewhat different grounds was reached in the case of *People v. Soto,* 77 Misc.2d 427, 353 N.Y.S.2d 375 (1974), which construed provisions of the New York penal code very similar to our own under facts similar to those here. The Commonwealth directs our attention to *State v. Meyer,* 283 Or. 449, 583 P.2d 553 (1978), in which the Supreme Court of Oregon reached a contrary result. In that case the Oregon Court looked to the commentary to its criminal code and found expressed there a legislative intent to incorporate within its present code the provisions of a former statute making the furnishing of alcoholic beverages or drugs to inmates of correctional institutions a felony. The Commonwealth does not suggest that any such expression of intention is found in the commentary to our code, nor do we find any.

The commentary to KRS 520.050 refers to a former statute, KRS 432.500, which made it a felony to furnish narcotics, liquor or firearms to a convict. It is clear from the commentary that the reference to the former statute is made only for the purpose of comparing the mental state necessary for liability under that statute with that necessary under KRS 520.050. The commentary also refers to another former statute, KRS 432.495, which made it a felony to deliver to or receive from a prisoner confined in a state penal institution *any* article contrary to the rules and regulations of the institution. This former statute is mentioned to show how the policy expressed by it has been changed through the present statutes.

It is not our holding that as a matter of law marijuana cannot constitute "dangerous contraband." Rather, we hold only that the evidence presented at trial in this case

did not provide a sufficient basis upon which the jury could determine that the quantity of marijuana possessed by the appellant was "dangerous contraband" within the meaning of KRS 520.010(3). Because of this, the trial court erred in instructing the jury on the felony of possession of contraband in the first degree.

Because of the result that we have reached, we do not deem it necessary to consider the question raised by the appellant as to whether KRS 520.050 is unconstitutionally vague.

The judgment of the trial court is reversed, and the case is remanded for further proceedings consistent with this opinion.

WHITE, J., concurs.

WINTERSHEIMER, J., dissents.

WINTERSHEIMER, Judge, dissenting.

I must respectfully but strongly dissent from the majority opinion. This Court overturns the jury decision in the circuit court on the basis of its interpretation of the commentary to KRS 520.010(3).

The majority has erred in two fundamental respects. It has improperly substituted its judgment for that of the jury verdict and has misinterpreted the plain meaning of the statute. I believe the jury fully understood the language of the law and properly found the appellant guilty under a very reasonable interpretation. The legislature also comprehended the words they used in adopting the statute. Only the commentary and this Court are out of step with reality.

In the absence of clear error or manifest injustice, appellate courts should not tamper with a jury verdict. Neither condition exists here.

I believe the statute is clear, but the commentary is vague and ambiguous. The statute here precisely defines contraband as that which may endanger the safety or security of the detention facility or its inmates. In attempting to classify various items of contraband, the commentary has wandered into the morass of ambiguity. It tries to provide examples to distinguish dangerous and simple contraband. However, I find nothing in the commentary which excludes other items of contraband from being factually determined as dangerous.

Kentucky has elevated the commentary on the penal code to almost the dignity of statutory enactment. The commentary is used to ascertain legislative intent where it is not clear. Here the plain meaning of the law is clear. Dangerous contraband is that which is capable of such use as may endanger the safety or security of the detention facility or the persons therein. The commentary uses examples which are definitely not exclusive. Under the circumstances, I believe the trier of fact, whether judge or jury, has the inviolate privilege of determining what is dangerous under the law. The majority in this decision substitutes its judgment for that of the trier of fact.

The language used in legislation should be understood and applied according to the ordinary sense or natural meaning of the words.

Under the rules of construction, the penal code is liberally construed according to the bare import of its terms to promote justice and to effect the objects of the law. KRS 500.100 provides that the commentary may be used as an aid in construing the provisions of the code. Here we have a triumph of a judicial interpretation of the commentary over the plain language contained in the law itself. I do not believe the statute is being construed according to the fair import of its terms.

The evidence in this case indicates that a deputy warden at the prison testified that marijuana is treated as dangerous contraband within the reformatory. He had seen the results of brutal beatings and stabbings involving marijuana and testified that where marijuana is sold in prison, debts are run up, interest is charged and weaker offenders are sexually abused. Marijuana causes inmates to become combative towards guards, fellow prisoners and visitors. There is sufficient evidence here to demon-

strate that marijuana is contraband which is capable of such use as may endanger the safety or security of the detention facility and the persons therein.

It should be obvious that any correctional or detention institution has peculiar needs and that the statutes and regulations designed to control articles brought into the prison must be examined in the light of those requirements. *United States v. Chatman,* 538 F.2d 567 (4th Cir.1976). The question of what is dangerous contraband under the statute is proper for jury or judge determination. Here the jury heard the evidence and determined the substance to be dangerous.

KRS 520.050, promoting contraband in the first degree, is not unconstitutionally vague. It does not require speculation as to its meaning. The legislature does not have to define an offense with such exactness that a person could determine in advance whether specific conduct in all possible factual circumstances will be found to be an offense. *State v. Williams,* 37 Or.App. 419, 587 P.2d 1049 (1978). Anyone who possesses marijuana in jail should know that he runs the risk of some penal sanction. The prisoners at Kentucky institutions are advised during orientation that marijuana is dangerous contraband.

It should also be noted that marijuana is a Schedule I, Controlled Substance, pursuant to KRS 218A.050(3), and is legally classified as a hallucinogenic.

I am not convinced that the New York case of *People v. Soto,* 77 Misc.2d 427, 353 N.Y.S.2d 375 (1974), is applicable here. *Soto, supra,* determined that marijuana was not dangerous contraband; however, that New York case is not persuasive because here there was strong evidence to indicate that marijuana endangers the safety and security of the prison and the people therein.

The Kentucky definition of dangerous contraband is not limited to deadly weapons and dangerous instruments. A person need not be aware of the specific legal classifications of the thing but only know the physical nature of the article and its potential danger. *See Kennedy v. Commonwealth,* Ky., 544 S.W.2d 219 (1977). By analogy, dangerous contraband is anything which is capable of a use which may cause disorder or physical injury in the prison. Marijuana clearly falls within such a classification. Here there is evidence that marijuana is more easily concealed and more readily brought into the institution than other items of contraband. There was testimony that the LaGrange Reformatory is overcrowded and that it is difficult to observe or control the prisoners under even the best of circumstances.

I find the majority's comparisons between alcohol and marijuana unconvincing. Generally alcohol is legal for adults; however, marijuana is illegal for everyone. There is no scientific evidence presented in this reference to justify such a comparison. There is no equality of substance or conditions that can be validly applied. The excursion into comparing alcohol, paint thinner and lemon extract as contraband which also can produce "highs" is of no value. Under specific conditions the legislature has clearly left the decision as to what is dangerous contraband to the triers of fact. The statute is clear; the commentary is confused.

Possession of marijuana, as well as alcohol, within a prison, should be punished more severely than our laws may now provide. If this decision becomes law, certainly the legislature should seriously consider redefining this section of the penal code.

Accordingly, I must respectfully dissent from the decision for two reasons: first, the interpretation of the statute is in violation of its clear meaning and the rules of construction; second, the facts presented before the jury clearly demonstrate that marijuana is a dangerous substance. There is no reason for this Court to substitute its judgment for that of the trier of fact.

Common sense dictates that to determine by appellate judicial fiat that marijuana in a prison is not dangerous contraband produces a patently absurd result.