COMMONWEALTH of Kentucky, Appellant,

v.

Patrick O'HARA, Appellee.

and

COMMONWEALTH of Kentucky, Appellant,

v.

Charles W. BLINCOE, Appellee.

and

COMMONWEALTH of Kentucky, Appellant,

v.

Lucky SIZEMORE, Appellee.

and

COMMONWEALTH of Kentucky, Appellant,

v.

Joseph LAWTON, Appellee.

and

COMMONWEALTH of Kentucky, Appellant,

v.

Lyndon Lee SWEATT, Appellee.

Nos. 88–CA–1134–MR, 88–CA–1136–MR to 88–CA–1139–MR.

Court of Appeals of Kentucky.

June 8, 1990.

Discretionary Review Denied by Supreme Court Sept. 19, 1990.

Frederic J. Cowan and Todd Ferguson, Frankfort, for appellant.

Larry H. Marshall, Frankfort, for appellees.

Before DYCHE, EMBERTON and LESTER, JJ.

EMBERTON, Judge:

This is an appeal from an order dismissing indictments against five men for promoting contraband in the first degree.

KRS 520.050. Upon review of the record, we reverse.

This case originally involved five separate cases. These were consolidated because of the similarity of facts and issues involved. The facts are not disputed. The appellees are inmates at the Kentucky State Reformatory, where they are serving sentences for various offenses. Each of them was caught in possession of marijuana while inside the reformatory. Each was indicted by the Oldham County Grand Jury for Promoting Contraband in the First Degree, and being a Persistent Felony Offender in the First Degree. Each of the appellees was found to have less than one-tenth of a gram (100 mg.) in his possession. Based upon hearings held August 24 and September 15, 1987, the trial court ruled as a matter of law that less than one-tenth of a gram (100 mg.) of marijuana was not a "usable amount" and could not form the basis for prosecution for the offense of promoting contraband in the first degree. Holding that the amount of marijuana found in possession of each appellee was not a "usable amount", the court dismissed the indictments on motion of the appellees. The trial court defined a "usable amount" to be a quantity sufficient to roll into a joint, light, and inhale.

The Commonwealth brings two assignments of error. First, that the statutes do not require the possession of a specific quantity of marijuana to sustain a conviction under the statute, and second, that the presence of illegal drugs within the detention facility creates situations which may endanger the security of the facility or persons therein.

Relative to appellant's first assignment of error we cannot agree with the ruling of the trial court. KRS 520.010(3) [1] expressly defines dangerous contraband as including marijuana; equally clear is that the legislature intended to classify marijua-

---

**1.** KRS 520.010(3) "Dangerous contraband" means contraband which is capable of such use as may endanger the safety or security of a detention facility or persons therein, including but not limited to dangerous instruments as defined in KRS 500.080, any controlled substances and *marijuana,* and saws, files, and similar metal cutting instruments. (emphasis supplied.)

na as a dangerous contraband for the purpose of KRS 520.050[2].

■■■ In reaching its decision, the trial court heard testimony on the quantity of "dangerous contraband" necessary to support a conviction under KRS 520.050. The Commonwealth argues that possession of marijuana in any identifiable amount, by a person incarcerated in a detention facility will support a conviction of the offense stated. Conversely, the appellees argue that a person must possess a "usable amount" of marijuana sufficient for the ordinary use to which the drug is put, before liability will attach. Put another way, the appellees argue that less than one-tenth of a gram is insufficient to constitute possession. Therefore, the question we face is: how much "dangerous contraband" must a person possess in order to be subject to KRS 520.050 in absence of explicit statutory guidance? The trial court found that the amounts of marijuana involved were small, from 15 mg. to 47 mg. It is our opinion that the proper focus of discussion is whether in drafting the statute the legislature intended to adopt a zero tolerance policy toward marijuana in an institutional setting. We think the answer is yes.

The appellees argue that the quantity of marijuana possessed by each does not constitute dangerous contraband contemplated by KRS 520.010 and KRS 520.050, and that the Commonwealth must show that such quantity was capable of such use as may endanger the safety and security of the detention facility. In support of their argument appellees rely on *Cooper v. Com.*, Ky.App., 648 S.W.2d 530 (1982), where we held that a quantity of marijuana sufficient to make two to four joints was not "dangerous contraband" within the meaning of KRS 520.050. However, subsequent to the holding in *Cooper*, legislation became effective amending the definition of "Dangerous Contraband" to specifically include marijuana in an institutional setting. Ac-

cordingly, there can now be no question that marijuana is "dangerous contraband." Moreover, there is no language in the statute requiring a "usable amount" in order to constitute an offense.

In *Koonce v. Com.*, Ky.App., 769 S.W.2d 73 (1989), the defendant was indicted under KRS 520.050 for possessing a quantity of marijuana in the tip of a rubber glove and an additional marijuana cigarette while an inmate at Kentucky State Reformatory. We said "[t]here was no question that the amount possessed by Koonce was (a) usable (amount) ..." and, we therefore, found it unnecessary to consider the question of whether possession of a "usable" amount is necessary for conviction under KRS 520.050. The lower court, in the case before us, as in Koonce, equates the meaning of the language of KRS 520.050[3] with whether the quantity of marijuana is actually and practicably usable for its normal intended purpose. We are convinced the legislature did not intend such limited application of the term "capable of such use."

The thrust of the appellee's argument is that possession of an unusable quantity of marijuana does not constitute a crime. However, apparently a minority of jurisdictions make this distinction requiring a "usable amount" where the statute is silent. *Minnesota v. Siirila*, 292 Minn. 1, 193 N.W.2d 467 (1971). Accordingly, other jurisdictions have refused to draw an imaginary line absent statutory guidance. As noted by the courts in New Jersey, "so long as quantitatively the substance seized is marijuana, the statute does not prescribe a minimum amount necessary to be possessed." It follows that this Court cannot be asked to specify what quantity of a contraband substance is sufficient to invoke criminal sanctions, so long as the presence of the substance is readily determined. *State v. Brown*, 188 N.J.Super. 656, 458 A.2d 165 (1983), *State v. Humphreys*, 54 N.J. 406, 255 A.2d 273 (1969).

**2.** KRS 520.050(1) A person is guilty of promoting contraband in the first degree when: (b) Being a person in a detention facility, he knowingly makes, obtains or possesses dangerous contraband.

**3.** ... which is *capable of such use* as may endanger the safety or security of a detention ...

In reaching this decision, we also consider the Commonwealth's second assignment of error, which condemns the presence of illegal drugs in a detention facility. In defining dangerous contraband in KRS 520.010, the state legislature articulated a clear public policy concerning the presence of contraband which would endanger the safety or security of a detention facility or the persons therein. We believe this policy to be one of zero tolerance where marijuana is concerned. The record is replete with testimony demonstrating the fact that marijuana causes problems in Kentucky prisons—thereby, endangering the safety or security of the detention facility. Captain William Turner, of Kentucky State Reformatory testified that marijuana is dangerous in an institutional setting because it can be bought and sold; interest is charged, and debts are created, which may lead to threats, to violence, and to payoffs through illicit acts. Al C. Parke, warden at KSR, testified that debts from the sale of marijuana account for 30–40% of all institutional violence. Moreover, Warden Parke stated that inmates routinely attempt to compromise prison guards, and that his personnel had been caught bringing marijuana into the facility. In this respect, the trial court's findings of fact and conclusions of law were clearly erroneous.

We believe adoption of a "usable amount" test could encourage inmates to partition out dangerous contraband into amounts small enough to avoid prosecution. Such minute amounts are not, contrary to the testimony of prison inmates, necessarily without value. They certainly have some value, or inmates would not carry or keep them. Warden Parke testified to the problems marijuana causes in his institution at LaGrange:

Well, primarily, in my 17 years of experience in corrections, the use of marijuana is the most largely used drug in the institution that we can find. I would say that accounts for 95 percent, and the reason for that is obvious. It is plentiful on the street, it is easy to conceal, and easy to get into the institutions as compared to alcohol and other substances such as that.

The major problem that we have in the correctional institutions are that the debt of the sale of marijuana probably, I will say will account for 30 to 40 percent of the institutional violence that we have ... generally speaking, we find marijuana in nickel and dime bags, and I think it was a dime bag that they had up here ... and I would say approximately 80 percent of the marijuana we find—is in that form.... If they don't use it in that form, I don't know why we find it so much....

There is two primary—two primary causes of violence in the institutions, as far as I am concerned. One is over the use and sale of drugs. The second is over debts, and they are closely intertwined.

Warden Parke went on to say he had seen inmates killed over the sale of marijuana and the debts created thereby, which might amount to as little as fifteen dollars. Clearly, marijuana in any quantity "is capable of such use as may endanger the safety or security of a detention facility or persons therein...."

The prison system receives special legislative attention under the statutes. Granted, while 100 mg. of marijuana might not cause significant problems on the street, within the confines of a prison, it can become the basis for trouble for inmates as well as prison personnel. This environment has its own peculiar problems, in that the insignificant and unremarkable can, and do, become magnified in importance. Our legislature defines crimes, not the courts. *Commonwealth v. Reneer*, Ky., 734 S.W.2d 794 (1987). Clearly, the legislature redefined "dangerous contraband" to include marijuana. In so doing, it did not require possession of any specific amount in order to constitute an offense under KRS 520.050. The legislature could easily have required a "usable amount" test had it so desired. We decline to substitute our judgment for that of the legislature. Accordingly, the order dismissing the indictments is reversed.

LESTER, J., concurs.

DYCHE, J., concurs in result only.