Argued and submitted July 31, 2002, reversed January 29, 2003

# STATE OF OREGON,
*Respondent,*

*v.*

# JOSE LUIS HERNANDEZ,
aka Psycho, aka Physico,
*Appellant.*

## CF990747; A111926

61 P3d 951

Rankin Johnson, Deputy Public Defender, argued the cause for appellant. With him on the brief was David E. Groom, Acting Executive Director, Office of Public Defense Services.

Janet A. Metcalf, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Haselton, Presiding Judge, and Linder and Wollheim, Judges.

WOLLHEIM, J.

## WOLLHEIM, J.

■ Defendant appeals his conviction for supplying contraband. ORS 162.185. He assigns error to the denial of his motion for judgment of acquittal, arguing that there was no evidence that the use of the alleged contraband posed a danger to the safety or security of the jail or any person therein.[1] In determining whether the trial court erred in denying a motion for judgment of acquittal, we view the evidence in the light most favorable to the state to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *State v. King*, 307 Or 332, 339, 768 P2d 391 (1989). We reverse.

Defendant was incarcerated at the Umatilla County jail. During a search of his cell, Deputy Hearn found a white pill cup that contained a powdery substance. That substance was later determined to be a prescription antidepressant, Doxepin, the distribution of which is controlled by the jail nursing staff. Defendant did not have a prescription for that medication.

Defendant was charged with supplying contraband. At trial, Hearn testified that the jail rules prohibited defendant from possessing contraband, including controlled medications, that Doxepin was a controlled medication, and that defendant's possession of Doxepin breached the security of the institution.[2] The state also introduced into evidence the jail rules, which define contraband as "[a]ny article or substance that is introduced into [the jail] without first being cleared by a Corrections Officer" and includes controlled medications. Defendant moved for a judgment of acquittal, arguing in part that the state had not sufficiently proved that the *use* of Doxepin would endanger the security of the jail. The trial court denied the motion.

---

[1] Defendant also appeals his sentence, assigning error to an upward sentence departure to which the state concedes error. Because of our disposition of the case, we do not address that assignment of error.

[2] Hearn was asked whether the introduction of or possession of Doxepin by defendant in any way breached the security of the county jail. His entire response was, "Yes, it did." Hearn was not asked whether the *use* of the drug would endanger the safety or security of the jail or any person in the jail.

On appeal, defendant argues that ORS 162.135(1)(a)(D) requires that, for a substance to be considered contraband, possession of the substance must be prohibited by statute or rule *and* its *use* would be dangerous to the safety or security of the institution or any person therein. Defendant renews his contention that the state failed to prove that Doxepin's use would endanger the safety or security of the institution.

The state responds that defendant's argument incorrectly assumes that the state must prove that the specific item or substance involved is dangerous. According to the state, a jail rule that prohibits the possession of a substance is enough to establish that the substance is one that, if used, would endanger the safety or security of the institution or any person in it. In the alternative, the state argues that the evidence was sufficient to prove that use of the substance was dangerous.

■ Before addressing the sufficiency of the state's evidence, we must construe the relevant statutes to determine what the state must prove to establish that an item is contraband for purposes of criminal liability. Specifically, we must determine whether the statute defining "contraband" contains two separate prongs or whether the statute has only one requirement—that the item be prohibited by statute or rule. When interpreting a statute, we follow the methodology of *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-11, 859 P2d 1143 (1993). Our goal is to determine the intent of the legislature. *Id.* At the first level of analysis, we examine the text and context of the disputed provision.

ORS 162.185 provides, in part, that a person commits the crime of supplying contraband if "[b]eing confined in a correctional facility * * *, the person knowingly makes, obtains or possesses any contraband." In turn, ORS 162.135(1)(a) defines "contraband" as:

"(A) Controlled substances as defined in ORS 475.005;

"(B) Drug paraphernalia as defined in ORS 475.525;

"(C) Except as otherwise provided in paragraph (b) of this subsection, currency possessed by or in the control of an inmate confined in a correctional facility; or

"(D) Any article or thing which a person confined in a correctional facility, youth correctional facility or state hospital is prohibited by statute, rule or order from obtaining or possessing, *and* whose use would endanger the safety or security of such institution or any person therein."

(Emphasis added.) The parties agree that the substance in this case was not a controlled substance as defined in ORS 475.005, drug paraphernalia, or currency, and, therefore, that to constitute "contraband" the substance must fall within subsection (D).

The plain wording of subsection (D) has two requirements for an article or thing to constitute "contraband": (1) its possession must be prohibited by statute, rule, or order, *and* (2) its use must endanger the safety or security of the institution or any person therein. The text appears unambiguous and supports defendant's contention that there are two separate and distinct prerequisites that must be proven for something to qualify as "contraband" under ORS 162.135(1)(a)(D). Further, the state's proposed interpretation would effectively make the second clause of ORS 162.135(1)(a)(D) superfluous. If the legislature intended what the state proposes, it could simply have defined contraband as any article or thing that an inmate is prohibited from possessing. We are not permitted to omit what has been inserted in a statute and, if possible, we must "give effect to all" of a statute's provisions. ORS 174.010; *Oregon Account Systems, Inc. v. Greer*, 165 Or App 738, 744, 996 P2d 1025 (2000).

■ Additionally, under the rule of prior construction, when the Supreme Court interprets a statute, "that interpretation becomes part of the statute as if written therein." *State ex rel Huddleston v. Sawyer*, 324 Or 597, 608, 932 P2d 1145 (1997). The court noted that some of the reasons for this principle include stability and certainty in the understanding of statutes. *Id.* at 608 n 7.

In *State v. Franklin*, 283 Or 439, 583 P2d 557 (1978), the Supreme Court construed ORS 162.135(1)(a)(D) to have two prongs, one requiring that possession of the substance be prohibited by statute or rule *and* the other requiring that its *use* would be dangerous. The state contends that *Franklin*

was a case about the sufficiency of the evidence and did not construe ORS 162.135. The state also argues that *State v. Long*, 315 Or 95, 843 P2d 420 (1992), implicitly overruled *Franklin* when it interpreted ORS 162.135(1)(a)(D) to delegate authority to local institutions to define contraband. Defendant argues that we should not give any weight to *Long* because it is a case about delegation and not statutory construction.

In *Franklin*, the defendant was charged with supplying contraband for possessing marijuana in a correctional institution. ORS 162.135 (1983) did not contain a subsection specifically defining controlled substances as contraband. Rather, a single section defined contraband in a manner identical to ORS 162.135(1)(a)(D). The defendant argued that the state's evidence was insufficient to prove that the *use* of the substance in question was dangerous to the safety or security of the institution or any person therein. In answering the evidentiary question, the Supreme Court was required to construe the statute:

> "[The state's evidence] did not address itself to the 'use' of the alleged contraband but only its 'introduction.' The statutory language requires that the danger to be proved relate to the *use* of the contraband. In addition, the statutory language requires that the state prove that the use of the alleged contraband *would* be a danger.
>
> "* * * * *
>
> "This construction is reinforced by the legislative history of this section. When the Criminal Law Revision Commission (Commission) considered the predecessors of the sections in question, they feared that items such as candy bars, sandwiches or comic books might be included under a definition of contraband which did not include the second prong of the present ORS 162.135(1). Possession of these items, opined the Commission, did not deserve criminal sanctions. The definition was amended to include the requirement that the *use* of the prohibited item must be dangerous. The construction supporting the state's position would thwart this intent and violate both the letter and spirit of this statutory provision."

*Franklin*, 283 Or at 444-47 (emphasis in original). Thus, while we agree with the state that *Franklin* was about the

sufficiency of the evidence, we also agree with defendant that the *Franklin* court interpreted the statute as having two prongs.

In *Long*, the defendant was charged with supplying contraband, ORS 162.185, after he was found in possession of tobacco, matches, rolling papers, and a burning cigarette in his cell. The defendant demurred to the indictment, arguing that by incorporating the definition of "contraband" in ORS 162.135, ORS 162.185 was an unconstitutional delegation of legislative authority. *Long*, 315 Or at 97. On review, the Supreme Court held that it was not, explaining that

> "the legislature did not delegate its power to make law, but only the power to determine the existence of facts or circumstances mentioned in the law upon which the law will become operative, *i.e.*, circumstances involving 'endanger[ing] the safety or security of [correctional facilities] or any person therein.' ORS 162.135(1)(d). That is constitutionally permissible."

*Id.* at 100 (footnote omitted).[3] The court went on to state that local correctional institutions "could designate by rule those items whose possession and use the county determined 'would endanger the safety or security of the county jail or any person therein.' " *Id.* at 101 (citation omitted).

While *Long* held that it was permissible for local institutions to designate items as contraband, it did not address what ORS 162.135(1)(a)(D) requires in terms of evidence. Specifically, *Long* does not hold that, simply because a rule labels an item contraband, it is sufficient to prove the statutory requirement that the use of the item is dangerous. *Long* also does not discuss *Franklin*, nor is it inconsistent with *Franklin*, because *Long* stands only for the proposition that jails can designate items as contraband.

---

[3] In a footnote, the court also referred to legislative history to clear up "any question left whether the legislature intended to delegate authority to implement statutory standards * * *." *Long*, 315 Or at 100 n 10. The minutes of the legislative subcommittee that reviewed the statute noted that the author of the bill " 'observed that this section leaves to the person in charge of the facility the determination of what would be considered contraband.' " *Id.* (quoting Minutes, Oregon Criminal Law Commission, Subcommittee No. 1, Nov 6, 1969, 18).

Given the Supreme Court's interpretation of ORS 162.135(1)(a)(D) in *Franklin*, we agree with defendant that the statute requires the state to prove that use of the substance was dangerous to the safety or security of the institution or any person therein. Nonetheless, giving the state the benefit of the doubt and assuming, without deciding, that *Long* introduces some ambiguity into ORS 162.135(1)(a)(D), we turn to legislative history. *PGE*, 317 Or at 611 (if the intent of the legislature is not clear from the text and context, the next step is to consider legislative history).

The legislative history unambiguously supports defendant's two-pronged interpretation. The intent of the legislature in enacting the statutory definition of contraband is explained in the commentary to the Proposed Oregon Criminal Code, 193 (1970):

> "No attempt is made to detail the articles constituting contraband. The designation of specific articles as contraband is properly a prerogative of those in charge of correctional institutions, juvenile training schools and state hospitals. Before criminal liability would attach for supplying contraband it must be shown that the article supplied is prohibited *and* that its use would endanger the safety or security of the institution or any persons therein."

(Emphasis in original.) That commentary, which is consistent with the text of the statute, demonstrates that, while the legislature intended to delegate authority to local institutions to designate articles as contraband, it also intended that two separate requirements be met before criminal liability attached: (1) that possession of the article is prohibited by statute, rule, or order and (2) that the use of the article would endanger the safety or security of the institution or any person therein.

In this case, the state's evidence was that Doxepin was a controlled medication, that the jail rules prohibited possession of controlled medications, and that defendant's possession of Doxepin breached the security of the institution. All of that evidence addressed the first prong of the statute. There was no evidence about the effects of Doxepin or how its use would be dangerous to the safety or security of the

institution or any person therein. The state argues that dangerousness can be inferred from a combination of the rule prohibiting possession and Hearn's testimony. We disagree. Inferring dangerousness on the facts of this case would be no different from interpreting the statute to have only one requirement. We have declined to do so. The trial court erred in denying defendant's motion for judgment of acquittal.

Reversed.